UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-81039-BLOOM/VALLE

SHIPPING AND TRANSIT, LLC,

    Plaintiff,

v.

1A AUTO, INC., d/b/a
1AAUTO.COM, *et al.*,

    Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court on Defendant's Verified Motion for Award of Attorneys' Fees and Costs Pursuant to 35 U.S.C. § 285 (ECF No. 25) (the "Motion"). United States District Judge Beth Bloom has referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 30). On June 15, 2017, the undersigned held a hearing on the Motion. (ECF No. 45). Accordingly, having reviewed the Motion, Plaintiff's Response and Sur-reply (ECF Nos. 26 and 34), Defendant's Reply and Response to the Sur-reply (ECF Nos. 29 and 37), the parties' supplemental filings (ECF Nos. 38, 43, 44, 46, 47, 48, and 49), and being otherwise duly advised in the matter, the undersigned respectfully recommends that the Motion be **GRANTED IN PART** to award Defendant reasonable attorneys' fees and costs incurred in this litigation.

## I.       PROCEDURAL BACKGROUND

On June 21, 2016, Shipping and Transit, LLC ("Plaintiff") filed a two-count complaint against 1A Auto, Inc., d/b/a/ 1AAuto.com ("Defendant"), claiming direct and indirect infringement of four patents (the '207, '359, '299, and '970 patents) (collectively, the "Asserted

Patents") under the Patent Act, 35 U.S.C. § 271(a).  *See* (ECF No. 1).  Plaintiff alleged that it owns all the rights, title, and interests for infringement of the Asserted Patents, which generally involve tracking of a vehicle/package, notification of a vehicle/package status, and/or notification of arrival of a vehicle/package at its destination. *See* (ECF Nos. 1 at ¶ 8-11 and 26 at 6).

On September 16, 2016, Defendant filed a Motion to Dismiss, challenging both the sufficiency of Plaintiff's pleading and the validity of the Asserted Patents.  *See generally* (ECF No. 12).   In the Motion to Dismiss, Defendant alleged that the Asserted Patents were unpatentable "abstract idea" material under *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014) (reiterating that an abstract idea is not patentable and "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").

On October 18, 2016, Plaintiff filed a Notice of Filing Covenant Not to Sue (the "CNS") and agreed to "never institute any action or lawsuit at law or in equity against [Defendant]" on numerous patents, including the Asserted Patents.  (ECF Nos. 19 and 19-1 at 1).  On the same day, Plaintiff filed a response to Defendant's Motion to Dismiss.  (ECF No. 20).  Plaintiff's response, however, did not substantively address the Motion to Dismiss.   Instead, Plaintiff requested its own dismissal of the case arguing that the CNS divested the Court of subject matter jurisdiction.  *Id.*   The District Court ultimately found that the CNS divested the Court of jurisdiction and dismissed the case with prejudice.  (ECF No. 24 at 2).   The instant Motion followed.

## II.      DEFENDANT'S FEE MOTION AND PLAINTIFF'S RESPONSE

Defendant seeks approximately $73,000 in attorneys' fees.  *See* (ECF No. 29 at 13). According to Defendant, it is entitled to its reasonable attorneys' fees as the prevailing party

because this is an "exceptional case" under 35 U.S.C § 285 of the Patent Act and post-*Octane Fitness* case law. (ECF No. 25 at 5)*; see Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). More specifically, Defendant argues that the totality of circumstances in this case, including the inadequacy of Plaintiff's pre-suit investigation, the weakness of Plaintiff's litigation position, Plaintiff's repeated pattern of "stick-up" litigation, and Plaintiff's suspect motive for filing suit, all combine to make this case "exceptional" under § 285. *See* (ECF Nos. 25 and 29).

Plaintiff opposes Defendant's fee request. *See generally* (ECF No. 26). Plaintiff argues that nothing about this litigation presents the type of circumstances or conduct that would make the litigation "exceptional" so as to entitle Defendant to fees under 35 U.S.C. § 285 and *Octane Fitness*. *Id.* Plaintiff also objects to the Defendant's hourly rates and number of hours billed. (ECF No. 26 at 13-22).

### III.    <u>LEGAL STANDARD</u>

#### A.  *The American Rule on Entitlement to Fees*

Generally, under the "American Rule," each party must pay its own attorney's fees, unless a statute or contract provides otherwise. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (internal citations omitted); *see also In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by statute or contract). Here, however, § 285 permits an award of reasonable attorneys' fees to the prevailing party in "exceptional" cases.

There is no dispute that Defendant is the prevailing party. *See* (ECF Nos. 25 at 8 and 26 at 5 n.6); *see also Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006). The Motion thus turns on whether this is an "exceptional" case under patent law.

### B.   Fees for an "Exceptional Case" Under  the Patent Act

In 2014, the Supreme Court established the current framework for determining what is an "exceptional" case under § 285.[1]  *See Octane Fitness,* 134 S. Ct. at 1756.  In *Octane Fitness*, the Court noted that the phrase "exceptional case" in the Patent Act's fee-shifting provision should be interpreted in accordance with its ordinary meaning to mean "uncommon," "rare," or "not ordinary."  *Id.*  Further, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Id.* The Court instructed that whether a case is "exceptional" should be determined on a case-by-case exercise of discretion, considering the "totality of the circumstances" and using a nonexclusive list of factors, including "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Id.* at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 114 S. Ct. 1023 (1994)).  Lastly, the Court lowered the requisite evidentiary standard for proving an "exceptional" case from clear and convincing evidence to a preponderance of evidence.  *Id.* at 1758.

Presently, courts conduct a multifactor analysis that considers the totality of the circumstances on a case-by-case basis to determine whether a case is "exceptional."  Using this case-by-case approach, some courts have declined to award fees.  *See, e.g.*, *Checkpoint Sys. Inc. v. All-Tag Security, S.A.*, 858 F.3d 1371, 1376-77 (Fed. Cir. 2017) (reversing a fee award after finding that the infringement claims were reasonable and the litigation was not in bad faith or

---

[1]  The Court abrogated the prior framework established by the Federal Circuit in *Brooks Furniture Mf. v. Dutailier Int'l, Inc.,* 393 F.3d 1378 (Fed. Cir. 2005), as unduly rigid and impermissibly encumbering the statutory grant of discretion to the district courts.  *Octane Fitness*, 134 S. Ct. at 1755.

abusive); *Peschke Map Techs. LLC v. Miromar Dev. Corp.*, No. 2:15-CV-173-FTM-38MRM, 2017 WL 991481, at *3 (M.D. Fla. Mar. 15, 2017) (declining to award fees because plaintiff's litigation representations did not meet the exceptionality threshold); *Freedom Sci., Inc. v. Enhanced Vision Sys., Inc.*, No. 8:14-CV-1229-T-36JSS, 2016 WL 2865353, at *3 (M.D. Fla. May 17, 2016) (although plaintiff's counsel's conduct left much to be desired, it was not so unreasonable as to warrant a finding of exceptionality); *Commonwealth Labs., Inc. v. Quintron Instrument Co., Inc.*, No. 14-20083-CV, 2015 WL 11216332, at *7 (S.D. Fla. July 20, 2015) (finding that the limited record did not establish exceptionality by preponderance of evidence), *report and recommendation adopted*, No. 14-CV-20083, 2015 WL 11216331 (S.D. Fla. Aug. 14, 2015); *Net Talk.com v. Magicjack Vocaltec Ltd.*, No. 12-CV-81022, 2015 WL 10015379, at *6 (S.D. Fla. Nov. 20, 2015) (noting that although *Octane Fitness* loosened the framework, exceptionality remained the exception to the rule); *NXP B.V. v. Blackberry, Ltd.*, 58 F. Supp. 3d 1313, 1323 (M.D. Fla. 2014) ("Although *Octane* [*Fitness*] eased the standard for fee-shifting and reduced the prevailing party's burden . . . to a preponderance of evidence, post-*Octane* [*Fitness*] decisions awarding fees have concerned egregious behavior.").

In contrast, other Courts have awarded fees under the same *Octane Fitness* framework. *See, e.g., Shipping and Transit v. Lensdiscounters.com,* No. 16-80980-CV, 2017 U.S. Dist. LEXIS 108182, at *9 (S.D. Fla. July 11, 2017) (involving the same Plaintiff as in this case and recommending that fees be awarded based on Plaintiff's litigation pattern and practice), *report and recommendation adopted*, No. 16-80980-CV (S.D. Fla. Aug. 8, 2017); *Shipping and Transit v. Hall Enters. Inc.*, No. CV 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122, at *19 (C.D. Ca. July 5, 2017) (involving the same Plaintiff as in this case and awarding fees where the case was objectively unreasonable and litigated in an unreasonable manner); *Gust Inc. v. Alphacap Ventures, LLC*, 226 F. Supp. 3d 232, 241 (S.D.N.Y. 2016) (awarding fees where claims were

frivolous and objectively unreasonable in light of *Alice*); *Edekka LLC v. 3balls.com,* No. 2:15-CV-541, 2015 WL 9225038, at *4 (E.D. Tex. Dec. 17, 2015) (awarding fees where claims were patent-ineligible and plaintiff litigated in an unreasonable manner); *Novartis Corp. v. Webention Holdings, LLC*, No. CCB-11-3620, 2015 U.S. Dist. LEXIS 146513, at *23 (D. Md. Oct. 28, 2015) (awarding fees where the evidence justified "an inference of improper motive, litigation misconduct, and subjective bad faith"); *Lugus IP, LLC v. Volvo Car Corp*., No. 12–2906 (JEI/JS), 2015 WL 1399175, at *5 (D.N.J. Mar. 26, 2015) (awarding fees because plaintiff had no objectively reasonable basis for its contentions after years of litigation, a claims construction hearing, and summary judgment in favor of defendant); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-1175-RGA, 2014 U.S. Dist. LEXIS 127645, at *6 (D. Del. Sept. 12, 2014) (awarding fees after affirmatively determining claim construction and finding suit frivolous); *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 335-36 (S.D.N.Y. 2014) (finding that basic pre-suit investigation would have revealed that no litigant could have expected success on the merits and that the motivation and deterrence prongs of *Octane Fitness* supported fee award).

The seemingly disparate case law underscores the principle that whether a case is "exceptional" is a determination in the Court's discretion, made on case-by-case basis, considering the multifactor analysis outlined in *Octane Fitness*.

## IV.    THIS IS AN EXCEPTIONAL CASE

After considering the totality of circumstances, the undersigned finds that the factors outlined in *Octane Fitness* and its progeny weigh in favor of awarding Defendant its reasonable attorneys' fees.

### A.  Substantive Strength of Plaintiff's Position

Courts have generally awarded attorneys' fees in patent cases when the alleged infringement claims are frivolous or objectively unreasonable.  *See supra* p. 5-6 (referencing cases where courts have awarded fees).  In this case, however, the District Court did not have the opportunity to evaluate the strength of Plaintiff's claims or the validity of the Asserted Patents because the CNS divested the court of jurisdiction to rule on the Motion to Dismiss.  (ECF No. 24 at 2).  Moreover, although Plaintiff concedes that a potentially negative change in the law (i.e., the effect of *Alice* on patent law), coupled with Defendant's exclusive use of licensed carriers, may have weakened or limited the scope of Plaintiff's claims, *see* (ECF Nos. 26 at 9 and 34 at 6), an affirmative finding of frivolousness or objective unreasonableness on the existing record is difficult.

Without a ruling on the validity of the Asserted Patents in this case, the undersigned looks to other evidence to assess the substantive strength of Plaintiff's claims.  *Lensdiscounters.com*, 2017 U.S. Dist. LEXIS 108182, at *13-14; *Hall*, 2017 U.S. Dist. LEXIS 109122, at *20-21.  Notably, after the hearing on the Motion, at least one court has evaluated the strength of three of the four Asserted Patents (i.e., patents '207, '299, and '359).  *Hall*, 2017 U.S. Dist. LEXIS 109122, at *1-2.  *Hall* involved the same Plaintiff as the instant case and the same type of infringement claims.  *Compare* (ECF No. 1) *with Hall*, 2017 U.S. Dist. LEXIS 109122, at *1-2.  In *Hall*, the Central District of California found that patents '299, '207, and '359 are "drawn to patent-ineligible abstract ideas," which lack inventive concept sufficient to transfer the abstract idea into a patent-eligible invention.  *Hall*, 2017 U.S. Dist. LEXIS 109122, at *14-15.  The court in *Hall* found that Plaintiff's position was "objectionably unreasonable" in light of *Alice* and held that "the weakness in Plaintiff's §101 position is a significant factor" that weighed in favor of finding that case "exceptional" for an award of fees.  *Id.* at 19.

7

*Hall* changed the legal landscape regarding the substantive strength of Plaintiff's claims. First, *Hall* provides the first known instance where a court has affirmatively ruled that three of the four Asserted Patents are unpatentable. *Id*; *see also* Transcript of 6/15/2017 Hearing (ECF No. 50 at 14:1-8) ("Hr'g Tr.") (through the hearing, the parties remained unaware of a ruling on the validity of the Asserted Patents). Second, the *Hall* court considered the manner of litigation in other cases to make the "exceptional" case determination. *Hall*, 2017 U.S. Dist. LEXIS 109122, at *23*; see also Lensdicounters.com*, 2017 U.S. Dist. LEXIS 108182, at *14. *Hall* and *Lensdiscounter.com* (further discussed below) strongly support the conclusion that the Asserted Patents are substantively weak even in the absence of a specific ruling on patent validity in this case.

Lastly, the strength of the Asserted Patents is also questionable based on a review of the adequacy of Plaintiff's pre-suit investigation. According to Defendant, Plaintiff knew or should have known before it filed suit that Defendant uses only two shipping vendors, United Postal Service ("UPS") and United States Postal Service ("USPS"), both of which have licenses from Plaintiff for use of the Asserted Patents, and whose licenses extend to customers (such as Defendant). (ECF No. 25 at 9). Moreover, even if Plaintiff was initially unaware of the weaknesses of its claims, Defendant asserts that it informed Plaintiff, in a telephone conversation on July 19, 2016 and by letter dated July 29, 2016, that: (a) Defendant used only UPS and USPS as its carriers; and (b) the Asserted Patents were invalid and constituted unpatentable "abstract idea" subject matter. *See* (ECF Nos. 25 at 7, 25-6 at 2 and 29 at 4-5). According to Defendant, Plaintiff nonetheless continued to press the litigation until Defendant "called its bluff" and filed the Motion to Dismiss. (ECF No. 29 at 5).

In defense of the adequacy of its pre-suit investigation, Plaintiff states that it relied on "publicly available information" (i.e., information on Defendant's website), to determine that

Defendant was likely infringing the Asserted Patents.  *See* (ECF No. 26 at 7); *see also* (ECF No. 44-1, the "Jones Affidavit").   According to Plaintiff, based on the publicly available information, Plaintiff sent Defendant a Notice Letter in March 2016 about the likely infringement.[2]  (ECF No. 26 at 7); *see also* (ECF No. 25-8) (Notice Letter asserting that Plaintiff conducted "research" and determined after "careful review" that Defendant's products included technologies protected by the Asserted Patents).   After several months with no response from Defendant, Plaintiff asserts it had little choice but to file this case.  *Id.*

The undersigned notes, however, that despite the information on the website that UPS and USPS were Defendant's shippers, and despite Defendant's subsequent oral and written communications to Plaintiff confirming the exclusive nature of the shipping relationship, Plaintiff continued to claim that it was unaware of the exclusivity between Defendant and its licensed carriers.   Plaintiff reiterates that it could not have known that Defendant only used certain carriers to deliver orders to customers because in "Plaintiff's experience, on line retailers, such as Defendant, use several carri[ers] in addition to those listed on their website." (ECF No. 26 at 8); *see also* Hr'g Tr. 44:23-45:1-2.  There is simply no evidence in the record to support the reasonableness of Plaintiff's contention.[3]  At best, this unsupported possibility is nothing more than speculation.  At worst, it is part of Plaintiff's predatory litigation strategy discussed further below.  *See infra* p. 13-15.

Plaintiff's pre-suit investigation lacked thoroughness.  Moreover, although Plaintiff filed the Jones Affidavit seemingly to expand on the nature and scope of its pre-suit investigative

---

[2]  Unbeknownst to Plaintiff, however, the Notice Letter was not delivered to Defendant. (ECF No. 26 at 7).
[3]  Plaintiff made the same argument in *Lensdiscounters.com*, which the Court rejected.  *See infra* p. 13-14.

efforts, *see* (ECF No. 44-1), the Jones Affidavit is woefully insufficient.[4]   The conclusory statements in the Jones Affidavit do not change the fact that Plaintiff's "thorough pre-suit investigation" consisted solely of reviewing Defendant's website, whose contents Plaintiff then summarily rejected based on its unsupported "suspicion" that Defendant "might be" using other unlicensed carriers.   The undersigned finds Plaintiff's explanations unconvincing.   *See, e.g., Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.,* 858 F.3d 1383, 1389 (Fed. Cir. 2016) (finding that conclusory and unsupported statements have no evidentiary value).

Thus, in considering the totality of the circumstances, the undersigned finds that the substantive weakness of Plaintiff's claims weighs in favor of finding this is an "exceptional" case.[5]

### B.  Plaintiff's Overall Litigation Conduct and Motivation for Filing Suit

Defendant argues that Plaintiff never intended to defend the Asserted Patents and merely filed suit to "extort a nuisance settlement."  (ECF No. 25 at 10).  According to Defendant, Plaintiff's actions demonstrate a "stick-up" strategy designed to make Defendant choose between incurring significant defense fees or paying a nuisance settlement to end the case.  (ECF Nos. 25 at 5, 29 at 4, 6); *see also* Hr'g Tr. 12:5-9.

---

[4]  In the Affidavit, Mr. Jones summarily declares that he "went through a conclusive and extensive process to determine the likelihood of infringement existed [and that he] analyzed the Defendant's infringement by reviewing publically [sic] available information concerning the infringing system [and] compared the elements of each claim with the publically [sic] available information . . . [to determine] that infringement likely occurred as identified in the Notice Letter."  (ECF No. 44-1 at 1-2).

[5]  In the end, however, a district court may award fees even if the losing party's position was objectively reasonable when other considerations weigh in favor of such an award.  *See Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 1988 (2016) (internal citation omitted).

In response, Plaintiff objects to Defendant's characterization and argues that it has the legal right to protect its inventions/patents, which are presumed valid.  Hr'g Tr. 37:21-25; 38:1-2; 39:10-13.  Plaintiff further argues that the Court should look solely to its conduct *in this case* to determine "exceptionality." *See* (ECF No. 26 at 9-10) (attempting to distinguish Plaintiff's counsel's conduct in this case from conduct in cases cited by Defendant).  According to Plaintiff, it "did not string out litigation, did not conduct a pressure for settlement and then run strategy." *Id*. at 12.  Rather, Plaintiff avers that it presented its position, along with reasonable settlements offers, which fell on Defendant's deaf ears.  *Id.*  In fact, Plaintiff states that "[i]f anyone can be accused of causing their client to incur fees[,] it would be Defendant's counsel," based on "their refusal to communicate [in response to Plaintiff's August 4, 2016 letter], choosing instead to ask for an extension, dropping all lines of communications, and filing a motion to dismiss that simply put Plaintiff in a position of resolve and potentially pay fees or the case would proceed." *Id*. at 12-13.

Plaintiff stresses that once it received Defendant's July 2016 letter, it realized that its potential claims were weaker than anticipated (both because of Defendant's use of licensed carriers and in light of the Supreme Court's holding in *Alice*).  *Id.* at 9, 12.  Accordingly, Plaintiff asserts that its August 2016 response to Defendant's letter was meant to "continue discussing the matter and possibly reach an amicable resolution," but it was Defendant who "had other plans" and instead filed its Motion to Dismiss.  *Id.* at 9; *see also* (ECF No. 25-7) (unopposed motion to extend Defendant's time to answer Complaint).  Plaintiff argues that it subsequently sought to resolve the litigation quickly by providing Defendant with the CNS and requesting that the Court dismiss the case.  (ECF No. 26 at 4).

While the litigation history *in this case* differs from the level of abuse cited by other courts in awarding fees for misconduct,[6] the brief and seemingly customary course of litigation here does not fully reveal Plaintiff's conduct.  Rather, the Court looks to Plaintiff's nationwide pattern of pervasive litigation in determining whether this is an "exceptional" case.  *See Rothschild*, 858 F.3d at 1389-90 (reversing an award of fees where the district court had "misjudged" plaintiff's conduct in other litigation and undisputed evidence of vexatious litigation warranted an exceptional case finding).  Indeed, "[a] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claim, is relevant to a district court's exceptional case determination under § 285."  *Id.* at 1390 (citing *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015)).

A review of Plaintiff's conduct beyond this case paints a troubling picture.  Specifically, Defendant submitted evidence that Plaintiff has filed more than 500 patent infringement cases nationwide between 2006 and 2016 regarding the Asserted Patents.  *See, e.g.*, (ECF Nos. 25 at 5-6 and 25-1 at 2-3); *see also* (ECF No. 12-1) (compilation of cases filed by Plaintiff or its corporate predecessor between 2006 and 2016).  These cases were either dismissed pursuant to a CNS (as was this case) or settled to avoid a ruling on the validity of the Asserted Patents.  (ECF No. 25 at 5-6).   According to Defendant, two of the asserted patents (the '359 and '970 patents)

---

[6] *See, e.g.*, *Edekka*, 2015 U.S. Dist. LEXIS 9225038, at *17 (consolidated actions with more than 200 defendants reflecting aggressive strategy that avoided testing the merits of the case and instead aimed for early settlements at or below the cost of defense); *Novartis*, 2015 U.S. Dist. LEXIS 146513, at *23 (finding that four waves of litigation against dozens of defendants along with party's late disclosure of prior art to the Patent and Trademark Office, created an inference of litigation misconduct warranting a fee award); *see also Small v. Implant Direct Mfg. LLC*, 2014 WL 5463621, at *4 (S.D.N.Y. Oct. 23, 2014) (noting that most cases awarding fees continue to involve substantial litigation misconduct).

are the most asserted patents since 2010, while the other two (the '207 and '299 patents) are in the top 25 most asserted patents nationwide.  *See* (ECF Nos. 25 at 6, 25-1, and 25-2).

Additionally, the Court discovered that Plaintiff filed 123 patent infringement cases in *this District* alone between May 2015 and August 2016.  *See* Ex. A attached (6/15/2017 CM/ECF report of cases Plaintiff filed in this District).  As addressed during the hearing on the Motion, most of the cases in this District ended with either voluntary dismissals or the filing of a CNS by Plaintiff, consistently avoiding a ruling on the merits of the claims.  Hr'g Tr. 33:17 to 40:14.   Faced with these facts, Plaintiff's counsel conceded that despite the number of infringement cases brought by Plaintiff, the validity of the Asserted Patents remained untested through the date of the hearing.  Hr'g Tr. 39:24 to 40:12.

Lastly, the Court finds persuasive the recent ruling in this District in *Lensdicounters.com*, 2017 U.S. Dist. LEXIS 108182.  *Lensdiscounters.com* involved the same Plaintiff and the same alleged infringement claims as the instant case.  *Lensdiscounters.com*, 2017 U.S. Dist. LEXIS 108182, at *1-2.  Plaintiff in *Lensdiscounters.com* also filed a CNS, which it then followed with a motion to dismiss.  *Id*. at *3.  Upon dismissal, the defendant sought an award of attorney's fees based on the "exceptional" case standard.  *Id.*  After considering the *Octane Fitness* factors and reviewing the totality of the circumstances, the Magistrate Judge in *Lensdiscounters.com* concluded that the case was "exceptional" and recommended that fees be awarded.  *Id*. at *16.  The District Judge subsequently adopted that recommendation.  *Lensdiscounters.com,* No. 16-80980-CV (S.D. Fla. Aug. 8, 2017) (ECF No. 50).

*Lensdiscounters.com* mirrors this case.  In both cases, Plaintiff's conduct included the use of a boilerplate Notice Letter, which Plaintiff also sent to defendant companies in numerous other cases.  *Compare, e.g.*, (ECF No. 25-8) *with* (ECF No. 29-1, 29-2, and 29-3); *see also Lensdiscounters.com,* 2017 U.S. Dist. LEXIS 108182, at *12 (finding that the pre-suit demand

letter was devoid of any discussion regarding the identity of shippers and demanded a discounted 'license fee' that was indicative of a "nuisance value settlement").   Both cases contain "boilerplate" complaints that Plaintiff uses routinely to commence patent litigation.   *Compare* (ECF No. 1) *with Lensdiscounters.com,* No. 16-80980-CIV (ECF No. 1); *see also* complaints filed in *Shipping and Transit, LLC v. Online Stores, LLC*, No. 16-CV-80894-KAM (S.D. Fla. June 2, 2016); *Shipping and Transit, LLC v. Fulmer Logistics*, No. 16-CV-81526-BB (S.D. Fla. Aug. 30, 2016); *Shipping and Transit, LLC v. Langston, Co.*, No. 16-CV-60114-WPD (S.D. Fla. Jan. 19, 2016).   Additionally, in both cases, Plaintiff summarily argued that it was initially unaware of Defendant's exclusive use of UPS and USPS as shippers.   *Compare* (ECF No. 26 at 3 n.3) with *Lensdiscounters.com*, 2017 U.S. Dist. LEXIS 108182, at * 9-11.

Most significantly, the *Lensdiscounters.com* court found that "the hundreds of substantially similar if not identical lawsuits filed in this district, suggests that Plaintiff's strategy is predatory and aimed at reaping financial advantage from defendants who are unwilling or unable to engage in the expense of patent litigation."   *Lensdiscounters.com*, 2017 U.S. Dist. LEXIS 108182, at *15.   The *Lensdiscounters.com* court rejected Plaintiff's arguments regarding its motivation for filing the case and concluded that Plaintiff's motivation was "to extract a nuisance settlement on a theory that [defendant] would rather pay a 'license fee' than be subjected to what Plaintiff described would be an 'aggressively litigated patent infringement lawsuit.'"   *Id.* at 13.

The same rationale applies here.   The undersigned finds that Plaintiff's motivation in filing this and scores of other actions was not (as Plaintiff claims) a legitimate exercise of its patent rights.   Rather, it seems that Plaintiff executed a calculated business strategy to secure relatively small and quick settlements from defendants who wished to avoid protracted and costly patent litigation.   *See, e.g.*, *Rothschild,* 858 F.3d at 1390 (noting that a settlement offer for

less than ten percent of the cost of defense effectively ensures that baseless infringement allegations remain unexposed) (internal citation omitted); Brian T. Yeh, *An Overview of the "Patent Trolls" Debate*, Congressional Research Service Report for Congress, Apr. 16, 2013, at Summary (noting that the vast majority of defendants settle because patent litigation is risky, disruptive, and expensive, regardless of the merits).  In sum, Plaintiff's predatory litigation conduct and suspect motivation for filing this action are factors that weigh in favor of finding this case "exceptional."

### C.  Considerations of Compensation and Deterrence

Lastly, the Court must evaluate whether considerations of compensation and deterrence weigh in favor of an award of fees.  For the reasons discussed above, the undersigned finds that compensation and deterrence weigh heavily in favor of an "exceptional" case finding.  Overall, the substantive weakness of Plaintiff's claims, Plaintiff's inadequate pre-suit investigation, the boilerplate form of Plaintiff's notice and complaints, the hundreds of similar actions filed in this District and nationwide, and Plaintiff's repeated "file and dismiss" strategy, all suggest that Plaintiff's conduct is a pattern and practice used to obtain financial advantage against defendants in costly patent litigation.  *Lumen*, 24 F. Supp. 3d at 336.  Simply put, Plaintiff's *modus operandi* can no longer be ignored.

For all the foregoing reasons, after reviewing the totality of the circumstances and applying the factors dictated by *Octane Fitness* and its progeny, the undersigned finds that Defendant has established by a preponderance of evidence that this is an "exceptional" case, which warrants the award of its reasonable attorneys' fees.[7]  Having found that Defendant is

---

[7] Defendant also asserts that fees are warranted under 28 U.S.C. § 1927 because Plaintiff has filed serial and vexatious litigation.  *See* (ECF No. 25 at 10 n.2).  However, because the undersigned recommends the award of attorneys' fees under 35 U.S.C. § 285, the undersigned need not address Defendant's alternative argument under § 1927.

entitled to attorneys' fees, the undersigned will next consider the reasonableness of the amount requested.

## V.   <u>DEFENDANT IS ENTITLED TO REASONBLE ATTORNEY'S FEES</u>

### A. The Lodestar Method

In assessing the reasonableness of a request for attorneys' fees in the Eleventh Circuit, courts use the "lodestar" method to calculate an objective estimate of the value of an attorney's services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303).

Importantly, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id*. at 428.  When a request for attorneys' fees is unreasonably high, a court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Procaps S.A. v. Patheon Inc*., No. 12-24356-CIV, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013) (reducing party's fee request with across-the-board cut based upon billing inefficiencies).  Although courts may apply either method, they cannot apply both. *Bivins*, 548 F.3d at 1351.  Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).  Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id*.

16

### B. *Reasonable Hourly Rates*

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)).   The relevant market is "the place where the case is filed."   *ACLU*, 168 F.3d at 437 (internal quotation and citation omitted).   Here, the relevant legal community is South Florida.

In determining reasonable hourly rates in South Florida, the undersigned may also consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson factors*")).[8]   The Court also may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.   *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

Defendant was represented by attorneys from two firms:  (1) Philip Swain and Stephen Bychowski of Foley Hoag LLP, based in Boston, Massachusetts; and (2) Adam Schachter from the Miami firm of Gelber Schachter & Greenberg, PA ("GSG").   Defendant seeks $73,370.27 in fees for services rendered.  (ECF No. 29 at 13).   The undersigned has reviewed counsel's billing records (ECF Nos. 25-10 at 5-23 and 25-13 at 5-8), the relevant *Johnson* factors, counsel's qualifications (ECF Nos. 25-11, 25-12, and 25-14), and the declarations of Messrs. Bychowski

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

and Schachter.  (ECF Nos. 25-10 at 2-3 and 25-13 at 2-3).  Based on this review, and the Court's own judgment and experience, the undersigned finds that the hourly rates charged by defense counsel are reasonable for the reasons discussed below.

### i.   *Foley Hoag Attorneys*

Mr. Swain is a partner at Foley Hoag, and has more than 30 years of experience as a patent litigator.  Prior to joining Foley Hoag, Mr. Swain was a partner in another national firm, and early in his career served as a law clerk to a judge on the Federal Circuit in Washington, D.C.  (ECF No. 25 at 14).  Mr. Swain has tried more than a dozen patent litigation cases before the Federal Circuit and numerous trademark and copyright cases.  (ECF No. 25-11). With regard to Mr. Bychowski, he is a sixth year associate at Foley Hoag, who graduated with high honors in 2011 from Northwestern University School Law.   (ECF Nos. 25 at 14 and 25-12).  Merssrs. Swain and Bychowski have hourly rates of $830 and $530, respectively.  (ECF Nos. 25-10 at 3 and 25-12).

At first blush, counsel's hourly rates appear high for the South Florida market.  The undersigned, however, does not recommend a reduction to their hourly rate for several reasons.  First, as a specialized area of the law, patent litigation continues to command high attorney rates, even in South Florida.  Mary Welch, *Lawyer Compensation: Billing Rates Remain Firm With Limited Increases*, Daily Business Review, Oct. 5, 2015, at A8 (noting that patent work has high rates and is not price sensitive); *see also* Yeh, *supra*, at 12 (noting that patent litigation is expensive, with settlement being the only quick or affordable way to avoid it).  Second, although Plaintiff objects to defense counsel's rates, *see* (ECF No. 26 at 14-15), Plaintiff fails to provide the Court with comparable rates for patent litigation in South Florida or Plaintiff's counsel's hourly rates for comparison.   In the absence of persuasive evidence showing that defense

counsel's rates are higher than customary for patent litigation in South Florida, the undersigned will not disturb the hourly rate for the Foley Hoag attorneys.

>    *ii.  GSG Attorneys*

Attorney Schachter was local counsel for Plaintiff.  Mr. Schachter is a founding partner at GSG and billed an hourly rate of $515.  (ECF Nos. 25 at 16 and 25-13 at 2).  Mr. Schachter received his law degree from Georgetown University Law Center in 2000.  (ECF No. 25 at 15).  After law school, Mr. Schachter was a litigator at a New York firm, and then clerked for the Honorable Patricia Seitz in this District.  Prior to founding GSG, he was an associate at Stearns Weaver Miller Weissler Alhadeff & Sitterson in Miami for approximately 10 years.  (ECF Nos. 25 at 15 and 25-14).

Plaintiff objects to Mr. Schachter's hourly rate as excessive and out-of-line with the South Florida market.  *See* (ECF No. 26 at 20).  For the reasons discussed above regarding the expense and expertise required in patent litigation, and based on the Court's own knowledge of South Florida rates, the undersigned finds Mr. Schachter's hourly rate of $515 reasonable.

>  **C.    Reasonable Hours Expended**

Having determined the reasonable hourly rates, the undersigned next addresses the reasonableness of the hours expended by the attorneys working on the case.  As a general rule, attorneys must exercise what the Supreme Court has termed "billing judgment."  *Hensley,* 461 U.S. at 434.  That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman,* 836 F.2d at 1301 (internal quotation marks and citations omitted).

Importantly, "if fee applicants do not exercise billing judgment, courts are obligated to do it for them."  *ACLU*, 168 F.3d at 428.  The fee applicant also bears the burden of providing

specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the action. *Id.* at 427, 432–33. In the end, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d at 1301.

Defendant's fee request is based on approximately 117 hours billed by counsel.[9] *See* (ECF Nos. 25 at 14-16 and 29 at 13). Plaintiff objects to the number of hours worked, generally asserting that "[t]his particular matter did not involve complex issues, but simple straightforward issues and claims." (ECF No. 26 at 15). Plaintiff also notes that the litigation was generally brief, with a total of four substantive filings between the parties (i.e., Complaint, Motion to Dismiss, Response to Motion to Dismiss, and Reply to the Response). *Id.* As well, Plaintiff asserts that the billing records are significantly redacted, making it difficult to accurately assess the time entries. (ECF No. 26 at 15). Lastly, Plaintiff cites to various instances of redundant or duplicative billing by defense counsel. *See* (ECF No. 26 at 17-19).

The Court will not penalize Defendant for having more than one lawyer, including local counsel familiar with federal practice in this District. Nor is the number of hours billed excessive. Nevertheless, the amount of hours billed requires adjustment for several reasons.

First, although some redaction of time entries may have been necessary to protect privileged information, the extensively redacted entries hinder the Court's evaluation of the time

---

[9] Defendant failed to calculate the total number of hours billed by counsel. Based on the Motion (ECF No. 25 at 13-16) and Reply (ECF No. 29), however, the Court has calculated that defense counsel billed approximately 117 total hours on this matter. Specifically, through the filing of the Motion, counsel billed 73 hours. *See* (ECF. No. 25 at 13-16) (indicating that Mr. Swain billed 24.5 hours, Mr. Byschowki billed 37.1 hours, and Mr. Schachter billed 11.4 hours). Subsequently, as part of its Reply, Defendant submitted billing records for additional fees incurred in connection with drafting the Motion. (ECF No. 29 at 13). These additional billing records evidence 43.9 hours incurred in connection with this matter. *See* (ECF No. 29-6 at 7, 13, 18) (reflecting hours billed for October and November 2016). The time records total 117 hours.

spent by counsel and prevent an assessment of the specific tasks performed.  *See, e.g.*, (ECF No. 25-10 at 10, 16) (reflecting redacted entries that lack detail).

Second, although there is nothing inherently unreasonable about a client having multiple attorneys during conferences, each individual should be compensated only for the individual's distinct contribution.  *Norman*, 836 F.2d at 1302 (internal citation omitted).  Because of the format of the time entries in this case, however, it is difficult for the Court to assess the distinct contribution of counsel.  For example, Mr. Swain's time entry for July 19, 2016 for a total of 2 hours reads as follows:

> Telephone conference with E. Turnbull regarding infringement claim, settlement proposal; correspondence [**redaction**] review demand letter; draft [**redaction**] telephone conference [**redaction**] follow-up correspondence [**redaction**] draft correspondence to Mr. Farrington [**redaction**]

(ECF No. 25-10 at 10).  On the same day, Mr. Bychowski's time entry for 1.7 hours reads as follows: "Conference with opposing counsel; conference with P. Swain [**redaction**] conduct research for response to demand letter." *Id.*  Without more, the Court is unable to evaluate the time spent by Messrs. Swain and Bychowski and cannot determine if the fees incurred are, in fact, separately rewardable.

Lastly, the July 19, 2016 time entries (exemplary of other entries) also contain impermissible block billing, which is the practice of including multiple distinct tasks within the same time entry.  *See Bujanowski v. Kocontes*, No. 8:08-CV-0390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009); *see also* (ECF No. 25-10 at 20) (Swain time entry for 9/22/16 indicating that he worked on various correspondence, without a break down of time, which totaled 1.2 hours).  While the undersigned does not doubt that counsel worked in good faith on the projects attributed to this case, the Court must be able to verify the need or relatedness of

those projects before it can approve payment for the time incurred.  *See Hermosilla v. Coca-Cola Co.*, No. 10-21418-CV, 2011 WL 9364952 at * 15 (S.D. Fla. July 15, 2011).

Overall, the undersigned concludes that a minimal fee reduction is appropriate in this case.  Rather than conducting an hour-by-hour analysis of counsel's time entries, the undersigned recommends an across-the-board 15% reduction to the fees requested to account for counsel's overly redacted time entries, redundancy in efforts, and block billing.  Consequently, the undersigned recommends that Defendant be awarded **$62,364.73** in attorney's fees ($73,370.27 reduced by 15%).

### D.       Costs Pursuant to Federal Rule of Civil Procedure 54

A prevailing party may recover costs as a matter of course unless otherwise directed by the Court or applicable statute.  *See* Fed. R. Civ. P. 54(d)(1).  Defendant is the prevailing party in this case.  Consequently, Defendant is entitled to an award of costs under Federal Rule of Civil Procedure 54.

Defendant requests a total of $66.27 in costs and expenses incurred in the litigation. (ECF No. 29 at 13).  Plaintiff does not specifically challenge Defendant's entitlement to an award of costs.  Consequently, Defendant should recover its full costs of $66.27.

### VI.     RECOMMENDATION

Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to for Award of Attorneys' Fees and Costs (ECF No. 25) be **GRANTED IN PART.**  The District Judge should award Defendant **$62,364.73** in attorneys' fees and **$66.27** in costs.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D.

Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on September 26, 2017.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Beth Bloom
   All Counsel of Record